UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMES E. MANLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 3:13-CV-1308 JD |
| v. | ) |
| | ) |
| INDIANA DEPARTMENT OF CORRECTION, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

James E. Manley, a *pro se* prisoner, filed a third amended complaint (DE 30) raising numerous causes of action against twelve defendants arising out of events in late 2013 related to various disciplinary actions taken against him. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Manley cites many statutes as a basis for his claims. He cites to 15 U.S.C. § 1 and § 15. However, these are antitrust statutes that have no relationship to any of the prisoner civil rights claims raised by Manley. He also attempts to raise RICO claims but he has not alleged any injury "to his business or property" as required by 18 U.S.C. § 1964(c) for a RICO claim. *Rylewicz v. Beaton Services*, Ltd., 888 F.2d 1175, 1180 (7th Cir. 1989). Though he alleges that he has suffered an injury to his business because he was fired from his job, a prisoner does not have a liberty or property interest in a prison job. *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000). Therefore the

loss of his job does not constitute an injury to his business or property. *Alley v. Angelone*, 962 F. Supp. 827, 832-833 (E.D. Va. 1997). Moreover, an allegation of job loss resulting from false imprisonment (or here – false reports) is not a basis for RICO jurisdiction. *Evans v. City of Chicago*, 434 F.3d 916, 924-31 (7th Cir. 2006). Manley also cites to other federal criminal statutes. However, "the Supreme Court has been unwilling to treat criminal laws as implying private entitlements . . .." *Chapa v. Adams*, 168 F.3d 1036, 1038 (7th Cir. 1999). "[C]riminal prosecution is an executive function within the exclusive prerogative of the Attorney General." *United States v. Palumbo Bros.*, 145 F.3d 850, 865 (7th Cir. 1998) (quotation marks and citation omitted). Though 18 U.S.C. § 1595 provides a private right action to enforce 18 U.S.C. § 1581 – which prohibits slavery (or peonage as the statute refers to it) – Manley is a prisoner and as the Thirteenth Amendment states that "punishment for a crime whereof the party shall have been duly convicted" is not prohibited. Manley cites to 42 U.S.C. § 1985, but that statute "prohibits a conspiracy . . . motivated by racial, or other class-based discriminatory animus." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Manley has not alleged any racial or class basis for the actions taken against him, therefore he has not stated a claim under 42 U.S.C. § 1985. Though one could infer that Manley is alleging that his class is that of a prisoner, "[p]risoners are not a suspect class . . .." *Johnson v. Daley*, 339 F.3d 582, 585-86 (7th Cir. 2003) (en banc), *see also Gillis v. Pollard*, 554 Fed. Appx. 502 (7th Cir. 2014). Manley also cites to 42 U.S.C. § 1997d, but there is no private right of action under that statute. *Price v. Brittain*, 874 F.2d 252 262 (5th Cir. 1989). Finally, Manley cites to 42 U.S.C. § 1983. "In order to state a claim under § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). 42 U.S.C. § 1983 is the only basis for any of the claims

presented by Manley. Therefore all of the factual allegations raised in the amended complaint will be analyzed pursuant to that statute.

In paragraphs 1, 3, 4, 8, 10, 11, 12, 17, and 18 (DE 30 at 3-10), Manley alleges that various defendants conspired to take various actions in violation of his Constitutional rights. However, "conspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez*, 550 F.3d 613 (7th Cir. 2008). "Section 1983 does not . . . punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises." *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982). "A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Thus, none of the conspiracy allegations state a claim.

In paragraph 2 (DE 30 at 3), Manley alleges that on October 22, 2013, Superintendent Mark Sevier, Program Director Robert Eutz, Sergeant Kopensparger, and Officer Thomas retaliated by firing him from his job and placing him under investigation for having pornographic material because he had written three complaint letters[1] to public officials. "To prevail on his First Amendment retaliation claim, [Manley] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Here, Manley meets the first prong because he

---

[1] Manley wrote to United States District Attorney Joseph Hogsett on October 1, 2013, and October 4 , 2013. He wrote to Indiana Attorney General Greg Zoeller on October 7, 2013. DE 30 at 3.

alleges that he engaged in a First Amendment activity by writing to public officials. As to the second prong, prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir.2000). Thus, even though Manley did not have a liberty or property interest in his prison job, *see DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000), "[t]he First Amendment prohibits threats of punishment designed to discourage future protected speech [when] the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). The loss of a job meets that standard, but being subjected to in investigation does not because "[g]uards take control of where and how prisoners live; they do not retain any right of seclusion or secrecy against their captors, who are entitled to watch and regulate every detail of daily life."*Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995).

> Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection. This objective inquiry is not static across contexts, but rather must be tailored to the different circumstances in which retaliation claims arise. Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse.

*Dawes v. Walker*, 239 F.3d 489, 493 (2nd Cir. 2001) (citations and quotation marks omitted). Being observed, searched, and investigated is inherent to life as a prisoner. Thus, even if the defendants intended to retaliate against Manley when they investigated whether he was in possession of pornographic material, that would not state a claim. Finally, though it is unclear what these four defendants knew about the three letters Manley wrote to public officials, Manley has plausibly alleged that they fired him from his prison job because he wrote them. Therefore Manley will be

granted leave to proceed against Superintendent Mark Sevier, Program Director Robert Eutz, Sergeant Kopensparger, and Officer Thomas for retaliating against him in violation of the First Amendment by firing him from his job on October 22, 2013, because he wrote three complaint letters to public officials.

In paragraphs 4, 5, 6, 7, and 13 (DE 30 at 4-6 and 8), Manley alleges that on November 5, 2013, Internal Affairs Investigator R. Hobbs retaliated against him by writing a conduct report which falsely accused Manley of using a computer in an unauthorized manner. In paragraph 14 (DE 30 at 8), Manley alleges that on November 12, 2013, Officer J. Larimore did not dismiss that conduct report even though he knew it was false. In paragraphs 15 and 16 (DE 30 at 8-9), Manley alleges that on November 19, 2013, Sergeant R. Beemer did not dismiss the conduct report and denied him due process during the disciplinary hearing even though he knew it was false. "Falsifying a disciplinary charge [does] not give rise to liability for unconstitutional retaliation unless the motive for the fabrication was to retaliate for the exercise of a constitutional right." *Perotti v. Quinones*, 488 Fed. Appx. 141, 146 (7th Cir. Ind. 2012) *citing Lagerstrom v. Kingston*, 463 F.3d 621, 625 (7th Cir. 2006). Here, Manley alleges that the false charge was motivated by his having written six complaint letters to public officials[2] and because he had filed four lawsuits in the Miami Circuit Court. Though Manley does not explicitly say that Larimore and Beemer's actions were motivated by the same retaliatory intent as Hobbs', liberally construing the complaint, it is reasonable to infer that is his claim. Therefore he will be granted leave to proceed against Hobbs, Larimore, and Beemer on these claims.

---

[2] Manley wrote to the Indiana Attorney General on October 26, 2013, and on October 28, 2013. He wrote to United States Attorney General Eric Holder on October 22, 2013, to United States District Attorney Joseph Hogsett on October 22, 2013, to FBI Special Agent Robert A. Jones on October 30, 2013, and to FBI Director Robert S. Mueller, III, on October 30, 2013.

In paragraphs 8 and 9 (DE 30 at 6-7), Manley alleges that on November 5, 2013, Classification Supervisor Kelli Bradley placed him on "idle-no pay status" after being instructed to do so by Superintendent Mark Sevier and Assistant Superintendent Kevin Mulrooney. In paragraph 9 he also alleges that Casework Manager Kimberly Snow presented him with a job classification form to sign. However, inmates do not have either a liberty or a property interest in their jobs. *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000). The Constitution does not create a due process liberty interest in avoiding transfer within a correctional facility or remaining in the general prison population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). Instead, an inmate is entitled to due process protections only when more restrictive conditions impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. In light of *Sandin* and *Wilkinson*, inmates have no liberty interest in merely being classified into "idle-no pay status" even if it results in experiencing harsher conditions. *See Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008); *Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir. 2005). Therefore these allegations do not state a claim.

In paragraphs 17 and 18 (DE 30 at 9-10), Manley alleges that on November 25, 2013, Classification Supervisor Kelli Bradley retaliated against him by transferring him to the L Housing Unit which she knew to be a more dangerous environment because he had sought a restraining order from the Miami Circuit Court on November 6, 2013, and filed a grievance appeal. This states a claim against Bradley for retaliating against Manley in violation of the First Amendment.

Finally, Manley is seeking compensatory and punitive damages as well as injunctive relief and a declaratory judgment. The injunctive relief he seeks is to prevent the defendants from harassing, intimidating, or retaliating against him. However, Manley is now housed at the New Castle Correctional Facility and the defendants are at either the Westville Correctional Facility or

the Miami Correctional Facility. When "a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred." *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (quotation marks and citations omitted). Because Manley has not plausibly alleged that he will be transferred to either of those prisons, Manley cannot proceed on an injunctive relief claim. The declaratory relief claim Manley is seeking relates to the unavailability of the grievance process. However, none of the claims on which Manley is proceeding are related to grievance issues. Moreover, the PLRA does not require the existence of a grievance system and an inadequate process "cannot form the basis for a constitutional claim." *Kervin v. Barnes*, __ F.3d __, __; No. 14-2983; 2015 WL 3424909, *2 (7th Cir. May 29, 2015). Thus Manley cannot proceed on a claim for a declaratory judgment. Manley seeks to proceed against each of the defendants in both their individual and official capacities. However, he is only proceeding on claims for monetary damages and official capacity claims against state officials for monetary damages are not permitted. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore Manley may only proceed on his individual capacity claims.

For the foregoing reasons, the court:

(1) **GRANTS** James E. Manley leave to proceed against Superintendent Mark Sevier, Program Director Robert Eutz, Sergeant Kopensparger, and Officer Thomas in their individual capacities for compensatory and punitive damages for retaliating against him in violation of the First Amendment by firing him from his job on October 22, 2013, because he wrote three complaint letters to public officials;

(2) **GRANTS** James E. Manley leave to proceed against Internal Affairs Investigator R. Hobbs in his individual capacity for compensatory and punitive damages for retaliating against him in violation of the First Amendment by writing a conduct report on November 5, 2013, which falsely

accused Manley of using a computer in an unauthorized manner, because he had written six complaint letters to public officials and filed four lawsuits in the Miami Circuit Court;

(3) **GRANTS** James E. Manley leave to proceed against Officer J. Larimore in his individual capacity for compensatory and punitive damages for retaliating against him in violation of the First Amendment by screening him on November 12, 2013, on a conduct report which he knew falsely accused Manley of using a computer in an unauthorized manner because he had written six complaint letters to public officials and filed four lawsuits in the Miami Circuit Court;

(4) **GRANTS** James E. Manley leave to proceed against Sergeant R. Beemer in his individual capacity for compensatory and punitive damages for retaliating against him in violation of the First Amendment by denying him due process during a disciplinary hearing on November 19, 2013, on a conduct report which he knew falsely accused Manley of using a computer in an unauthorized manner because he had written six complaint letters to public officials and filed four lawsuits in the Miami Circuit Court;

(5) **GRANTS** James E. Manley leave to proceed against Classification Supervisor Kelli Bradley in her individual capacity for compensatory and punitive damages for retaliating against him on November 25, 2013, in violation of the First Amendment by transferring him to the L Housing Unit which she knew to be a more dangerous environment because he had sought a restraining order from the Miami Circuit Court on November 6, 2013, and filed a grievance appeal;

(6) **DISMISSES** all other claims;

(7) **DISMISSES** Assistant Superintendent Kevin Mulrooney, Production Assistant Debroah Krise, Casework Manager Kimberly Snow, and Lt. R. Sterling;

(8) **DIRECTS** the clerk to transmit the summons and USM-285 for Superintendent Mark Sevier, Internal Affairs Investigator R. Hobbs, Program Director Robert Eutz, Classification

Supervisor Kelli Bradley, Sergeant R. Beemer, Sergeant Kopensparger, Officer J. Larimore, and Officer Thomas to the United States Marshals Service along with a copy of this order and a copy of the third amended complaint (DE 30);

(9) **DIRECTS** the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to effect service of process on Superintendent Mark Sevier, Internal Affairs Investigator R. Hobbs, Program Director Robert Eutz, Classification Supervisor Kelli Bradley, Sergeant R. Beemer, Sergeant Kopensparger, Officer J. Larimore, and Officer Thomas; and

(10) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), Superintendent Mark Sevier, Internal Affairs Investigator R. Hobbs, Program Director Robert Eutz, Classification Supervisor Kelli Bradley, Sergeant R. Beemer, Sergeant Kopensparger, Officer J. Larimore, and Officer Thomas to respond, as provided for in the Federal Rules of Civil Procedure and N.D. IND. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

ENTERED: July 6, 2015

                                            /s/ JON E. DEGUILIO
                                            Judge
                                            United States District Court